# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:24-cv-00100-MR-DCK

| | |
|---|---|
| JESSE L. SHOOK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CHARLES J. MCNALLY, et al., )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on Motions for Summary Judgment filed by Defendants Charles J. McNally [Doc. 47] and Norma Biddix [Doc. 53].

## I. BACKGROUND

The Plaintiff Jesse L. Shook filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred while he was incarcerated at the Mountain View Correctional Institution ("MVCI").[1] The Plaintiff's unverified Second Amended Complaint[2] passed initial review against Charles J. McNally, a nurse practitioner who provided healthcare services to

---

[1] The Plaintiff is presently incarcerated at the Avery Mitchell Correctional Institution.

[2] The Plaintiff's original Complaint [Doc. 1] and First Amended Complaint [Doc. 14], which were also unverified, both failed initial review. [See Docs. 13, 17].

inmates at MVCI, and Norma Biddix, the nursing supervisor at MVCI, for claims of deliberate indifference to a serious medical need. [Doc. 19: Second Am. Compl; Doc. 22: Order on Initial Review]. The Plaintiff seeks damages. [Doc. 19 at 5].

The Defendants filed Motions for Summary Judgment. [Doc. 47: McNally MSJ; Doc. 53: Biddix MSJ]. The Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 57: Roseboro Order]. The Plaintiff responded in opposition to the Motions for Summary Judgment [Doc. 60: MSJ Response; Doc. 60-2: Plaintiff's Decl.;[3] Doc. 62: Plaintiff's Medical Records]; and Defendant McNally replied [Doc. 62: McNally Reply; see Doc. 63: Biddix Notice of Intent to Not Reply]. These matters are ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is

---

[3] Titled "Memorandum of Law Statement of Facts." This document is signed under penalty of perjury, but the Plaintiff's other filings are unverified.

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable

jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. <u>Kennedy v. Joy Technologies, Inc.</u>, 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

4

<u>Scott</u>, 550 U.S. at 380.

## III.  FACTUAL BACKGROUND

The following is a summary of the forecast of relevant evidence in the light most favorable to the Plaintiff.

The Plaintiff was injured in an altercation with another inmate on June 30, 2022.  [Doc. 60-2: Plaintiff's Decl. at 1].  His injuries, including a painful and swollen left elbow, were assessed at an outside hospital. [Doc. 50-2: McNally Ex. at 96].  When the Plaintiff returned to MVCI later that day, he reported that "[n]othing was broken and they said I was going to live."  [<u>Id.</u> at 94].

On July 6, 2022, McNally saw the Plaintiff on a sick call about his injuries.  [Doc. 50-1: McNally Decl. at ¶ 10]. The Plaintiff reported that the hospital had only x-rayed his shoulder, that he was having 8/10 pain radiating down his arm, and that his shoulder mobility was limited.  [<u>Id.</u>].  McNally requested x-rays.  [<u>Id.</u>].

The Plaintiff presented to the clinic on July 19, 2022 to discuss the results of the x-rays, which were negative for fractures.  [<u>Id.</u> at ¶ 11; Doc. 50-2: McNally Ex. at 87].  The Plaintiff reported that he was unable to extend his arm, he had an "open space" at his elbow, and he thought he may have torn a tendon. [Doc. 50-1: McNally Decl. at ¶ 11].  McNally placed an "urgent"

5

Utilization Review ("UR") board request for the Plaintiff to have an MRI and an outside orthopedic consult.  [Id.; Doc. 50-2: McNally Ex at 8-9].  McNally noted, "IF THERE IS A MUSCLE TEAR AT THAT LOCATION, THERE IS A LIMITED TIME FOR SURGICAL REPAIR EFFECTIVENESS." [Doc. 50-1: McNally Decl. at ¶ 11; Doc. 50-2: McNally Ex. at 88].

The Plaintiff's orthopedic treatment was initially delayed when he tested positive for Covid on July 21, 2022.  [Doc. 50-2: McNally Ex. at 83, 85].  After he recovered, the Plaintiff underwent an outside evaluation and left elbow MRI on August 12, 2022.  [Id. at 303].  The MRI showed a triceps tendon tear with 3cm of retraction.  [Id.].  Based on his review of the MRI, McNally made a UR request for an orthopedic consultation on August 16, 2022.  [Id. at 67].

On August 19, 2022, the Plaintiff was seen at EmergeOrtho.  [Id. at 293, 295]. The report states, in pertinent part, as follows:

1.  Subacute left elbow distal triceps tear
2.  Left elbow medical osteoarthritis

Plan: Treatment options are discussed with patient. We discussed operative and nonoperative options. I discussed that unfortunately he is close to 2 months out from his original injury and this may make it more difficult to repair his tricep by  his native tissue.  We will likely need to utilize allograft augmentation to assist in repairing this.  He may also have some continued pain out of the elbow secondary to the degree of osteoarthritis.

6

… We have extensively discussed options for treatment including operative and nonoperative….

Informed consent was gained for left distal tricep repair with possible allograft augmentation.
….

1. Pain of left elbow joint…
2. Rupture triceps tendon…
   · ORTHOPAEDIC SURGERY (SURG) – Note to Provider: left distal tricep repair with possible allograft augmentation
3. Osteoarthritis of joint of left elbow….
Patient will return to the office as needed.

[Id. at 293-95].

The Plaintiff was seen at the MVCI clinic upon his return from the EmergeOrtho trip. [Doc. 50-2: McNally Ex. at 61]. The Plaintiff stated: "I went to see the orthopedist and I have to have surgery on my shoulder." [Id.]. While a nurse was checking the Plaintiff's vitals, McNally and Biddix "advised [Plaintiff] that [an] 'urgent surgery request would be submitted to the U.R. board the following morning.'" [Doc. 60-2: Plaintiff's Decl. at 2]. A Cosign/Review page reflects that the August 19 EmergeOrtho Report was "Reviewed by McNally, Charles J NP" on August 23, 2022. [Id. at 296].

Despite McNally's and Biddix's promise, a surgical request was not immediately requested. The Plaintiff continued to be seen for various medical issues between August 29, 2022 and October 2022. [Id. at 56, 58-60, 289-90]. On October 12, 2022, the Plaintiff saw Nurse Jennifer Hopper

7

for the renewal of several medications.  At that time, Nurse Hopper requested a records review by McNally.  [Id. at 54].

On October 17, 2022, the Plaintiff submitted a sick call request, complaining about both his ear and his left triceps.  [Id. at 281].  The Plaintiff saw a nurse on October 18, 2022.  [Id. at 51].  At that time, the Plaintiff stated: "I am still having pain in my right upper arm. I saw the orthopedist and I thought they wanted to have surgery, but I have heard nothing about it.  I am losing muscle mass and strength in my arm."  [Id.].  The Plaintiff was scheduled for a check with the provider.  [Id. at 53].

On October 19, 2022, McNally performed a records review pursuant to Nurse Hopper's October 12th request.  McNally immediately submitted a UR request for an emergency surgical consult.  [Id. at 50].

On October 20, 2022, EmergeOrtho documented an "urgent" voicemail regarding the Plaintiff's surgery as follows: "VM today that the facility overlooked the sx order, is this too late for sx? Do we need to see this patient again?"  [Id. at 276].   EmergeOrtho's note reflects that "[t]he surgery would likely be more difficult at this point. We certainly could still attempt this we could just inform the patient that the odds of significant success do go down the longer the tear goes untreated."  [Id.].

On October 25, 2022, McNally discussed the Plaintiff's upcoming surgery with him, and submitted UR requests for the Plaintiff's pre-op and post-op appointments. [Id. at 11, 45-46, 49].

The Plaintiff received surgery at EmergeOrtho on November 3, 2022. [Id. at 238]. By the time of surgery, the Plaintiff's triceps had retracted by 9cm. [Id.]. The surgeon noted that while the Plaintiff already had some limited extension of his elbow due to osteoarthritis, "the triceps was significantly retracted secondary to a 4-month-old injury." [Id. at 239].

At his follow-up EmergeOrtho appointment on November 14, 2022, the Plaintiff "lack[ed] the final 15-20 degrees of extension and he [was] able to flex to 90 degrees actively [with] [f]airly well-maintained motion in pronation and supination with only mild limitation." [Id. at 243]. The doctor further noted:

> Given the chronicity of his tear, the tension of the triceps certainly will be asymmetrical compared with contralateral side. Preoperatively he had an extensor lag secondary to osteoarthritis of the elbow and this may not improve long-term. Actively, he is able to flex to 90 degrees today but he likely will have a fair amount of stiffness in flexion secondary to the contracture of the tricep. I would like to get him involved with occupational and physical therapy in hopes of improving his function and range of motion of the shoulder….

[Id.]. The Plaintiff began physical therapy for "weakness of the left elbow, wrist/hand and loss of normal motion of the left elbow" with an "[e]xcellent"

9

prognosis. [Id. at 231]. The Plaintiff regained functional use of his arm, experienced decreased pain, and achieved a "much improved" range of motion. [Doc. 55-2: Biddix Ex. at 253, 254, 260].

The Plaintiff submitted a grievance on December 25, 2023, complaining that he learned on December 19 about the "overlooked" surgical order. [Id. at 4]. Biddix responded to the grievance, stating that no further action was required. [Id. at 2]. The facility agreed with Biddix at Step Two [id. at 3], and the appeal was dismissed at Step Three because the matter was considered resolved [id. at 1].

Biddix did not supervise McNally or any other nurse practitioners or clinicians. [Doc. 55-5: Biddix Decl. at ¶ 5]. Biddix was not authorized to approve, modify, or order surgery without authorization of a patient's medical provider, and no one under her authority had that authorization. [Id. at ¶ 9]. Biddix adhered to her duties as nursing supervisor at all times while employed at NCDAC. [Id. at ¶ 18].

## IV. DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on a claim under the Eighth Amendment, a

10

plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. Deliberate indifference "entails something more than mere negligence," but does not require actual purposeful intent. Farmer v. Brennan, 511 U.S. 825, 835 (1994); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). "It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." Rish, 131 F.3d at 1096 (quoting Farmer, 511 U.S. at 837).

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). An official acts with deliberate indifference if he had actual knowledge of the

11

prisoner's serious medical needs and the related risks but nevertheless disregards them. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

To establish liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up); see Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). Mere knowledge of a deprivation is insufficient. Williamson, 912 F.3d at 171. As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). While personal involvement is required, it need not be "hands-on." Riddick v. Barber, 109 F.4th 649 (4th Cir. 2024). "Instead, the 'requisite causal connection' between defendant and violation can be established if the defendant 'set[s] in motion a series of acts by others which the actor[ ] know[s] or reasonably should know would cause others to inflict the constitutional injury.'" Id. at 649-50 (citing Amisi v. Brooks, 93 F.4th 659, 670 (4th Cir. 2024) (internal quotation marks omitted) (establishing

12

liability for a person who "subjects, or causes to be subjected," another person to a deprivation of constitutional rights)).

The forecast of evidence in the light most favorable to the Plaintiff demonstrates that McNally did not submit a surgical request for the Plaintiff until October 19th, despite telling the Plaintiff that one would be submitted as early as August 20th.  The Plaintiff, however, has failed to present any forecast of evidence from which a jury could reasonably conclude that McNally's failure to submit the surgical request was anything more than a negligent oversight.  See Parrish, 372 F.3d at 302-03 ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").  The Plaintiff also has not forecast any evidence that McNally knew that delaying the submission of a surgical request would subject the Plaintiff to an objectively serious risk of harm, insofar as the orthopedic report states that nonsurgical options were also available.  See Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022) (noting that a "commonplace medical delay" will only rarely constitute an Eighth Amendment violation, such as where "the prisoner's condition deteriorates markedly or the ailment is of an urgent nature").

The Plaintiff claims that the delay in making the surgery referral resulted in him having a chronic retraction of his triceps muscle and only 45

degrees of flexion in his arm.  [Doc. 19 at 4].  The Plaintiff, however, has failed to present a forecast of evidence from which a jury could reasonably conclude that the two-month delay in the surgical request resulted in any harm to the Plaintiff that had not already occurred as result of the initial assault.  Pre-surgery, the Plaintiff suffered from a lack of full elbow extension, which was attributed to both his injury as well as some pre-existing osteoarthritis of the elbow.  [Id. at 243].  Post-operatively, following a stint of physical therapy, the Plaintiff regained functional use of his arm, experienced decreased pain, and achieved a "much improved" range of motion.  [Doc. 55-2: Biddix Ex. at 253, 254, 260].  There is simply nothing in the medical records before the Court to show that the two-month delay in surgery caused the Plaintiff to suffer any additional injury.

As for Defendant Biddix, the undisputed forecast of evidence demonstrates that she did not supervise Defendant McNally and that she lacked the authority to make or change any surgical orders.  As Defendant Biddix was not responsible for the delay in the surgical referral, either personally or in a supervisory capacity, the Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact that Biddix was deliberately indifferent to a serious medical need.

14

For all these reasons, the Defendants' Motions for Summary Judgment will be granted as to the Plaintiff's deliberate indifference claims.

### C.    Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted).  The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."  Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that either Defendant violated his constitutional rights, the Defendants are entitled to qualified immunity.  As such, summary judgment for the Defendants would also be proper on this ground.

15

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motions for Summary Judgment are granted, and this action is dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Motions for Summary Judgment filed Defendants Charles J. McNally [Doc. 47] and Norma Biddix [Doc. 53] are **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully instructed to enter a Clerk's Judgment in favor of the Defendants and to close this case.

**IT IS SO ORDERED.**

Signed: June 2, 2026

Martin Reidinger
Chief United States District Judge

16